[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to General Statutes 4-183, from a final decision of the defendant Department of Environmental Protection, (DEP), which granted the defendant, Connecticut Resources Recovery Authority, (CRRA) a permit to construct a permanent solid waste transfer station in the town of Ellington. The DEP Solid Waste Management Unit is the third named defendant.
The plaintiffs, Thompson Family Land Trust, and Rachel T. de Rham its trustee, owners of land abutting CRRA's landfill which adjoins the transfer station in question, has intervened in the agency proceedings and filed the instant appeal therefrom. General Statutes 22a-19. CT Page 7249
FACTUAL BACKGROUND
General Statutes 22a-208a authorizes the commissioner of environmental protection to "issue . . . a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities. . . ." "Transfer Stations" are included in the definition of "solid waste facility." General Statutes 22a-207 (4) and (5). On February 22, 1988, the CRRA filed an application with the DEP for a permit to construct a transfer station. See Return of Record (R.R. I exh. 2).
Upon receipt of a petition signed by more than twenty-five people, (R.R. I exh. 11), the DEP held a public hearing pursuant to General Statutes 22a-208a(e) in the town of Ellington on June 27, 1988. (R.R. III O/A I).
On August 10, 1988, the hearing officer, Lewis J. Miller, recommended issuance of the permit to construct the transfer station. (R.R. III O/A 1). Intervenors, plaintiffs herein, contested the hearing officer's proposed decision and requested oral argument pursuant to Conn. Dept. Reg. 22a-3a-1 (3)(a)(c). (R.R. 3 O/A 2). DEP Commissioner Leslie Carrothers designated Leonard Bruckman as her agent for the express and limited purpose of conducting oral arguments and rendering a final decision. (R.R. III O/A 9). Bruckman heard oral argument from all parties on October 17, 1988; (R.R. #III O/A 11). On December 22, 1988, Bruckman issued a final decision on the matter. (R.R. III O/A 11). Bruckman concluded that the hearing officer improperly excluded evidence regarding CRRA's compliance history, which intervenors had attempted to present at the hearing. (R.R. III O/A 11). Bruckman rejected the hearing officer's proposed decision and remanded the matter for further proceedings with direction to allow intervenors an opportunity to present evidence on CRRA's compliance history. (R.R. III O/A 11).
A remanded hearing was held in Hartford on February 1, 1989, before Hearing Officer Lewis J. Miller. On April 6, 1989, Miller issued a revised proposed decision and recommended issuance of the permit to construct. (R.R. III O/A 40). Intervenors objected to the revised proposed decision and requested oral argument. (R.R. III O/A 41). Leonard Bruckman heard oral argument on the revised proposed decision on May 11, 1989, in Hartford at the State office Building. (See R.R. III transcript of Hearing). On September 19, 1989, Bruckman issued his final decision upholding the proposed decision of the hearing officer and granting the permit to construct with CT Page 7250 several conditions. (R.R. III final decision). On October 4, 1989 intervenors, plaintiffs herein, requested reconsideration of the September 19, 1989 decision. (R.R. III M4). On October 20, 1989 this request was denied. (R.R. III M6).
General Statutes 22a-225 (e) provides: "the final order of the commissioner shall be subject to appeal as set forth in sections 4-183 and 4-184." The intervenors, plaintiffs herein, have now brought this appeal pursuant to 4-183 to contest the Commissioner's decision that granted CRRA a permit to construct a waste transfer station on its property in Ellington. General Statutes 4-183a provides in pertinent part, "a person who has exhausted the administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter."
ISSUES
The issues before the court are:
(1) whether the defendant DEP violated General Statutes (22a-19 (b) when it determined that the proposed activity did not create an unreasonable risk of pollution and, in fact, determined that the proposed transfer station was the most prudent and feasible alternative;
(2) whether the defendant DEP violated General Statutes 22a-208 (h) in failing to deny the application based on CRRA's compliance history with state and federal environmental law;
(3) whether the DEP erred in concluding the CRRA's permit application was complete in accordance with Conn. Dept. Reg.22a-209-4 (b)(1);
(4) whether the DEP's failure to hold a public hearing on the construction permit in the town of Ellington violated
(S) is the question of the validity of the CRRA's special Ellington Planning and Zoning Commission one properly to be determined by DEP in its consideration of this application?
AGGRIEVEMENT
"Pleading and proof of aggrievement . . . [are] a prerequisite to a trial court's jurisdiction over the subject matter of an appeal." Deckish v. Manafort, 175 Conn. 415, 419
(1978). "Unless a party can establish aggrievement, that party has no standing to appeal. General Statutes 4-183 (a)." Blau CT Page 7251 v. State Board of Education, 19 Conn. App. 428, 450 (1989), cert. denied, 212 Conn. 816 (1989).
Statutory Aggrievement.
The Connecticut Supreme Court has stated that where an entity files a notice of intervention at a commission hearing pursuant to General Statutes 522a-19(a) such entity has statutory standing to appeal from the Commissioner's decision for the limited purpose of raising environmental issues. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710,715 (1989). See, also, Mystic Marinelife Aquarium Inc. v. Gill, 175 Conn. 483, 490 (1978). Classical Aggrievement
 "`The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, "the party claiming aggrievement must successfuly demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." . . . . "' (citations omitted).
State Medical Society v. Board of Examiners in Podiatry,203 Conn. 295, 299-300 (1987). See, also, Red Hill Coalition, Inc. v. Conservation Commission, supra, 716, and Huck v. Inland Wetland and Watercourses Agency, 203 Conn. 525, 531 (1987). This court finds that the plaintiffs are both statutorily and classically aggrieved.
As has been previously noted, the plaintiffs properly intervened in the hearing before the agency and thus have complied with the statutory requisites of such aggrievement,
In addition, there has been evidence presented before the court and, the court so finds, the following facts:
The plaintiffs' property abuts the landfill operated by CRRA. The transfer station abuts this property. CRRA's project manager acknowledged to Rachel de Rham that the transfer station would extend the life of the landfill. Further, the transfer station would effect the value of the plaintiffs' land and would restrict its options for sale. CT Page 7252
Clearly the plaintiffs have demonstrated a specific personal and legal interest in the subject matter and are, therefore, also classically aggrieved.
TIMELINESS
The parties have agreed that this appeal has been timely taken. General Statutes 4-183 (b).
SCOPE OF REVIEW
A trial court reviewing the decision of an agency must sustain the agency's decision if the record of the agency's proceedings contains substantial evidence that supports any one of the reasons given by the agency in its decision. Huck v. Inland Wetlands and Watercourses Agency, supra, 539-40. The court must not substitute its judgment for that of the agency, nor should the court retry the case. All Brand v. Department of Liquor Control, 213 Conn. 184, 191-92 (1987). "The court's "'ultimate duty is only to decide whether, in light of the evidence, the (agency) has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. "' Buckley v. Muzio, 200 Conn. 1, 3 (1986)." All Brand Importers, supra, 192. "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (citations omitted). Huck, supra, 540-41. The burden of proof is on the plaintiff to show that the Commission acted illegally, arbitrarily or in abuse of its discretion. Viola v. Liquor Control Commission, 158 Conn. 359,361 (1958); Red Hill Coalition, Inc. v. Conservation Commission, supra, 7 1 38
I. Did the defendant DEP violate General Statutes22a-19 (b) when it determined that the proposed transfer station did not create an unreasonable risk of pollution and, in fact, determined that the proposed transfer station was the most prudent and feasible alternative?
The plaintiffs argue in their brief that the Commissioner's designee violated General Statutes 22a-19 (b) which provides:
 (b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering CT Page 7253 all relevant surrounding circumstances and factors there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.
The plaintiffs maintain that 22a-19 (b) requires the Commission to consider the feasibility of alternatives in determining whether the proposed facility would create an unreasonable risk of pollution. Thus, the plaintiffs argue, "the failure [of the Commissioner's designee] to meaningfully examine and analyze alternatives also erodes any basis for concluding that the facility poses no unreasonable risk of pollution." Therefore, the plaintiffs argue that the Commissioner's finding that the facility would not cause unreasonable pollution was arbitrary and capricious.
The defendants argue in their briefs that plaintiffs again have misconstrued the relevant statute. They claim that22a-19 (b) requires the DEP first to consider whether the proposed facility poses an unreasonable risk of pollution, and if so, the DEP is then required to consider alternatives. They maintain that the plaintiffs, failed to establish that the facility posed an unreasonable risk of pollution.
Although it is clear to the court that the statute is unambiguous in requiring DEP, in this case, to consider a reasonable alternative only if the proposed conduct is or is likely to have such effect (pollution). The record demonstrates that DEP found, in fact, from the evidence presented to it that the transfer station would result in improved environmental conditions and further that it was, in fact, the most feasible and prudent alternative. (R. R. I I I O/A 1, pp 2-4).
It is true, of course, that the plaintiffs presented evidence to the contrary. It is not the function of this court, however, to agree or disagree with the hearing officer, but only to determine is his conclusions are reasonably supported by the record. Huck v. Inland Wetlands and Watercourses Agency, supra, 539-540
From the myriad of testimony presented to the agency, although conflicting in nature, this court can only conclude that DEP did not abuse its discretion in finding as it did and therefore did not violate 22a-19 (b).
II. Did the defendant DEP violate General Statutes22a-208a(h) in failing to deny CRRA's application based on CRRA's history of compliance with state and federal environmental laws? CT Page 7254
General Statutes 22a-108a(h) provides:
 (h) No permit for a solid waste facility shall be granted unless the commissioner has considered the compliance of the applicant and any agent of the applicant responsible for management practices of such facility with all state and federal environmental laws. If transfer of a permit under this section was convicted of a violation of any state or federal environmental law and the commissioner finds, after hearing, that there is good cause to deny such permit or transfer of such permit, the commissioner shall not issue or transfer such permit.
The plaintiffs claim that the DEP violated 22-208a(h) because the Commissioner's designee did not give adequate consideration to CRRA's compliance history. Plaintiffs argue in their brief that "despite the history of systematic violations [by CRRA], the final decision granted CRRA its permit to construct with no explanatory discussion, merely a statement that `this compliance history does not warrant denial of a permit'. . . . This `consideration' of compliance mocks the clear intent of C.G.A. 22a-208a(h)." (plaintiffs' brief, p. 9).
The plaintiffs further argue that the Commissioner's designee violated Conn. Dept. Reg. 22a-209-4 (d)(1)(D) which provides in pertinent part that:
 The Commissioner shall issue a permit to construct or operate upon receipt of satisfactory evidence from the applicant that: (D) the owner or operator of the facility . . . has not repeatedly violated pertinent statutes, regulations, orders or permit terms or conditions at any solid waste facility.
It is the plaintiffs' position that CRRA was "thoroughly incapable of presenting evidence required by"22a-209-4 (d)(1)(D).
The defendants argue that 22a-208a(h) and Conn. Dept. Reg. 22a-109-4 (d)(1)(D) do not require the Commissioner to deny the application for a permit to construct, where examination of the applicant's compliance history reveals that "there has been a compliance problem." They further deny that there was, in fact, CT Page 7255 a compliance problem by CRRA.
Here, again, the statute does not require denial of an application because of the applicant's compliance history, but does permit denial upon consideration of the applicant's compliance history. Plaintiffs offer no authority for the proposition that such denial is required.
The record is replete with evidence from both sides concerning CRRA's compliance history. Recognizing that CRRA's record was historically faulty, the hearing officer so noted. (R.R. I 1, p. 7, Conclusion 1). Based on other evidence presented before him, however, the hearing officer found many instances of favorable compliance and concluded that CRRA's "compliance history does not warrant denial of a permit." (R.R. III O/A 40, 3a, 3c, 3e pp 2-3.)
This court is unable to find a statutory requirement or an abuse of discretion by DEP and concludes that 2a-208a(h) was not violated by DEP in failing to deny CRRA's application.
III. Did the defendant DEP err in concluding that CRRA's permit application was complete in accordance with Conn. Dept. Reg. 22a-209-4 (b)(1)?
It is apparent from the record that items required by the regulations to be submitted by the applicant were in this case omitted. They included a list of all solid waste facilities associated with CRRA, detailed area maps of the site, geological and hydrogeological information; etc. DEP nonetheless accepted the application as complete. The question before this court then is whether DEP has such authority under this regulation.
This question has been answered recently by our Supreme Court in Preston v. Department of Environmental Protection,218 Conn. 821 (1991). In that case the court specifically held that under Conn. Dept. Reg. 22a-209-4 (b)(1), an application for a permit to construct a solid waste facility need only include those items necessary in order for the Commissioner of Environmental Protection to make a decision on the application. The court rejected the argument that all items required by the regulation must be included. The court reasoned that it would "elevate form over substance" to require an applicant to submit information that the DEP deemed "unnecessary or superfluous." Preston v. Department of Environmental Protection, supra 830-831.
This court must therefore conclude that DEP did not violate its own regulations in accepting CRRA's application, in this case, as complete. CT Page 7256
IV. Did DEP violate General Statutes 22a-208a (e) when it failed to hold its second public hearing on the construction permit in the town of Ellington?
General Statutes 22a-208a(e) provides:
 The commissioner may hold a public hearing prior to approving or denying application if in his discretion the public interest will be best served thereby and shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. The commissioner may amend a permit to construct or to operate, without hearing, for minor changes in the facility design, practices or equipment that would not in his judgment significantly change the nature of the facility or its impact on the environment. Notwithstanding the provisions of this subsection, the commissioner shall conduct a public hearing on an application for a permit to construct a solid waste land disposal facility, including a vertical or horizontal landfill expansion, or on an application to transfer such permit. Such public hearing shall be conducted in the municipality in which the facility is to be located.
The plaintiffs claim that 22a-208a(e) requires the Commissioner to hold a public hearing on all types of solid waste facilities in the municipality in which the facility is to be located. Therefore the plaintiffs argue that the hearing officer violated 22a-208a(e) when he held the remanded public hearing in Hartford, rather than Ellington. Plaintiffs argue that this amounted to a jurisdictional defect. They do not claim that CRRA's application is for a land disposal facility. (oral stipulation on 3-38-91).
DEP argues that plaintiffs have misinterpreted the statute. DEP maintains that 22a-208a(e) requires only hearings regarding a land disposal facility to be held in the municipality in which the facility is to be located.
An examination of the statutory definitions of a land disposal facility and a transfer station make it clear that the legislature recognized their distinctly different functions. A land disposal area or facility is defined in General Statutes22a-207 (b) means "land . . . and structures . . . used for the disposal . . . of solid waste." (emphasis added). A transfer station is defined in 22a-207 (10) as "land . . . and CT Page 7257 structures . . . solid waste . . . (which) may be stored for transfer and transferred from vehicles. . ." (emphasis added).
Examining 22a-208a(e), it is obvious that the statute sets forth two different hearing requirements. Hearings for land disposal facilities must be held in the municipality where the facility is located. For other facilities no hearing is required, but on request may be held but in no specifically designated town.
This interpretation of the statute is confirmed by a brief examination of its legislative history. The last two sentences of the statute were added by amendment as P.A. 87-531, Section 2. Its proponents indicated an intent in the proposed bill to require public hearings for solid waste disposal facilities and further that they be held in the town of their location.
Although not controlling on it, this court must show deference to DEP's interpretation of the statute. Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489,496 (1986).
In summary then, this court can only conclude from an examination of the statute, its legislative history, and DEP's interpretation that, in this instance, DEP did not violate22a-208a(e) by refusing to hold its second hearing in Ellington, because this application was not for a solid waste land disposal facility.
V. Did DEP err when it failed to consider the validity of CRRA's special permit granted to CRRA by the Ellington Planning and Zoning Commission in 1987?
The plaintiffs devote a considerable portion of their brief to attacking the validity of the special permit for the transfer station granted to CRRA by the Ellington Planning and Zoning Commission in 1987. The plaintiffs argue that the validity of the special permit is relevant to the issue at hand because the final decision of the DEP Commissioner granting the transfer station permit contained a condition that required CRRA to submit its special permit that was issued by the Ellington Planning and Zoning Commission. The plaintiffs' brief sets forth four reasons why the special permit issued in 1987 is invalid.
The plaintiffs claim herein is invalid for two reasons:
1. Under General Statutes 22a-208b,[3] only the issuance of a permit to construct a solid waste land disposal requires proof of compliance with local zoning ordinances. Town of Preston v. Connecticut CT Page 7258 Siting Council, 21 Conn. App. 85, 90 (90).
2. The plaintiffs have cited no authority, nor is this court aware of any, which would permit DEP to review the validity of a zoning permit (and overturn it) in the context of an application for a permit before it. Certainly, this court is without jurisdiction to decide what purports to be an appeal from a zoning authority in the context of an appeal under the Uniform Administrative Procedure Act, General Statutes 4-166 et seq.
What the plaintiffs are here attempting to do is to collaterally attack the Ellington zoning permit. No appeal was apparently taken from the issuance of that permit. This court cannot now sanction what appears to be such an appeal by way of a collateral attack. The courts disfavor such attacks. Ames v. Sears Roebuck Co., 206 Conn. 16, 23-25 (1988). If plaintiffs have a legal ground to invalidate the Ellington permit, they should bring a direct action to correct it. Convalescent Center of Bloomfield, Inc. v. Dept. of Income Maintenance, 208 Conn. 187, 200-201 (1988); Lampson Lumber Co. v. Hoer, 139 Conn. 294, 297-98 (1952).
For all of the above reasons the plaintiff's appeal is dismissed and judgment may enter accordingly.
Freed, J.